# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2010

No. 08-40186

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

RUBEN CABRERA SAUCEDO, also known as Kiko;
CHRISTOPHER JAIME CARDENAS,

Defendants – Appellants

Appeals from the United States District Court
for the Southern District of Texas
No. 5:07-cr-00452-3

Before DeMOSS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellants Ruben Cabrera Saucedo (Cabrera) and Christopher Jaime Cardenas (Cardenas) (collectively "Appellants") were convicted by a jury of conspiracy to kidnap, aiding and abetting a kidnapping, and brandishing a firearm during a crime of violence. Finding the evidence sufficient and finding no reversible error in the district court's instructions to the jury or in the admission of certain evidence, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-40186

I.

In 2007, Appellants were socializing, as they frequently did, at a pool house in Laredo, Texas, with Enrique Adriano, Mateo Ezequiel Solis (Solis), and Santos Martinez. Adriano and Rogelio Isai Garcia (Garcia) resided in the pool house, which was situated on property owned by Mario Obregon. Adriano was questioning Solis about various rumors Solis had heard involving Lauro Pablo Valdez (Valdez), one of Obregon's employees. Eventually, Adriano summoned Valdez to the pool house for direct questioning. Valdez arrived with Obregon. Adriano began to question Solis and Valdez in the main room of the pool house. Adriano eventually focused his attention back on Solis, whom he came to believe was planning on stealing from Obregon. During Solis's questioning, Adriano, Martinez, and the Appellants were armed. Adriano, Martinez, and Cardenas assaulted Solis with their weapons.

Throughout the questioning, Adriano and Obregon would leave the main room of the pool house to speak in private. When Adriano emerged, he announced that he had a "green light" to take Solis "to the other side" of the international border into Nuevo Laredo, Mexico. Adriano and Obregon again went into the second room, where Adriano could be heard speaking on a two-way radio. Soon after the radio conversation, Garcia arrived at the pool house. Adriano, Garcia, and Obregon again left the room to speak in private. When they emerged, Adriano repeated that he was taking Solis "to the other side." Adriano and Garcia drove Solis across the border, where Adriano shot Solis once in the head and once in the back. Solis was able to make his way to a roadway where he was found by Mexican police officers.

Upon his return to the United States, Solis provided a statement to federal agents. A search of the property uncovered two assault rifles, a shotgun, and two bayonets. A square of carpeting in the main room had also been removed. Blood samples taken from the pool house matched Solis's DNA.

2

No. 08-40186

On July 17, 2007, Appellants were indicted on one count of conspiracy to kidnap in violation of 18 U.S.C. § 1201 (count one), one count of aiding and abetting a kidnapping in violation of 18 U.S.C. §§ 2 & 1201 (count two), and one count of brandishing a firearm during the conspiracy or kidnapping in violation of 18 U.S.C. §§ 2 & 924(c) (count three). The jury found Appellants guilty on all counts.[1] Cardenas was sentenced to a total of 391 months of imprisonment. Cabrera was sentenced to a total of 272 months of imprisonment. Appellants timely appealed the district court's order denying their motion for judgment of acquittal, evidentiary rulings, and alleged errors in the jury instructions.

II.

Appellants contend that the evidence was insufficient to establish that they knowingly and intentionally kidnapped or conspired to kidnap Solis. Specifically, Appellants assert that the Government failed to prove beyond a reasonable doubt that they knowingly and willfully agreed to detain and transport Solis, or that they derived any benefit from Solis's kidnapping. They argue that the evidence establishes only mere presence, not voluntary participation in the commission of the crime.

Because the Appellants moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Government's case and again at the close of all the evidence, this court reviews de novo their sufficiency claims. *See United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009). This court considers the evidence presented in the light most favorable to the Government to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Lopez-*

---

[1] Obregon and Martinez were indicted with the Appellants. Martinez pleaded guilty to count one pursuant to a plea agreement and testified for the government. Obregon and the Appellants were tried together. Obregon appealed his convictions separately. *See United States v. Obregon*, No. 08-41317, 2010 WL 1286876, at *2 (5th Cir. Mar. 31, 2010) (finding the evidence sufficient to support the jury's guilty verdict).

No. 08-40186

*Moreno*, 420 F.3d 420, 437-438 (5th Cir. 2005). All reasonable inferences and credibility determinations are resolved in support of the verdict. *See United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002). "We reverse only if a reasonably minded jury must necessarily have entertained a reasonable doubt as to the existence of the essential elements of the crime." *United States v. Crosby*, 713 F.2d 1066, 1071 (5th Cir. 1983) (citing *United States v. Davis*, 666 F.2d 195, 201 (5th Cir. 1982)).

A.

To prove an offense of kidnapping pursuant to 18 U.S.C. § 1201, the Government must establish "(1) the transportation in interstate [or foreign] commerce (2) of an unconsenting person who is (3) held for ransom or reward or otherwise, (4) such acts being done knowingly and willfully." *United States v. Barton*, 257 F.3d 433, 439 (5th Cir. 2001) (citing *United States v. Osborne*, 68 F.3d 94, 100 (5th Cir. 1995)). To prove the crime of aiding and abetting, the Government must establish that the kidnapping occurred and that the Appellants "(1) associated with the criminal venture; (2) purposefully participated in the crime; and (3) sought by [their] actions for it to succeed." *United States v. Pando Franco*, 503 F.3d 389, 394 (5th Cir. 2007) (citing *United States v. Garcia*, 242 F.3d 593, 596 (5th Cir. 2001)).

Finally, to prove an offense of conspiracy to kidnap pursuant to 18 U.S.C. § 1201(c), the Government must establish that (1) an agreement existed between two or more people to pursue the offense of kidnapping, (2) the Appellants knew of the agreement, and (3) voluntarily participated in the conspiracy. *See United States v. Montgomery*, 210 F.3d 446, 449 (5th Cir. 2000); *United States v. Bankston*, 603 F.2d 528, 531 (5th Cir. 1979). A jury "may rely on presence and association, along with other evidence thus, proof of an overt act in furtherance of the conspiracy is not required." *Montgomery*, 210 F.3d at 449. "[A]n agreement may be inferred from concert of action, [v]oluntary participation may be inferred

4

from a collocation of circumstances, and [k]nowledge may be inferred from surrounding circumstances." *United States v. Paul*, 142 F.3d 836, 840 (5th Cir. 1998) (quoting *United States v. Lechuga*, 888 F.2d 1472, 1476-77 (5th Cir. 1989)). The agreement may be implicit, and the jury may infer its existence from circumstantial evidence. *See United States v. Thomas*, 12 F.3d 1350, 1356-57 (5th Cir. 1994) (citation omitted). Typically, as is the case here, "the same evidence will support both a conspiracy and an aiding and abetting conviction." *United States v. Singh*, 922 F.2d 1169, 1173 (5th Cir. 1991).

Viewing the evidence in the light most favorable to the Government and resolving all reasonable inferences and credibility determinations in support of the verdict, there is sufficient evidence to support Appellants' guilty convictions for conspiracy to kidnap and aiding and abetting the commission of the kidnapping. The record demonstrates that Appellants were both armed throughout Solis's interrogation. Cardenas ordered Solis to "get on his knees" as the men surrounded Solis, then assaulted Solis with his weapon and demanded that Solis "confess the truth." Cardenas kept his rifle pointed at Solis when Adriano left the room to speak in private with Obregon. Cabrera blocked the front door of the pool house so that Solis could not leave. Appellants were present in the room when, on three separate occasions, Adriano announced that he was going to take Solis "to the other side." The main room of the pool house was small enough that everyone present would see and hear what was occurring. Cabrera was initially armed with a 9mm weapon that he gave to Adriano, which Adriano later used to shoot Solis. Finally, Cabrera was holding an AK-47 outside the door to the pool house after Solis was taken to Mexico, while Cardenas, Martinez, and Obregon were in the pool house cleaning up and removing a bloodied square of carpeting.

We find Cabrera's assertions that he possessed a firearm to protect himself, and not to harm Solis, insufficient to overturn the jury's verdict. *See*

*United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995) ("[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every exclusion except that of guilt." (quotations and citation omitted)). Cardenas argues that he did not participate in the discussions about when to take Solis into Mexico, and thus did not participate in any planning or decision-making. However, participation in the decision-making is not necessary to support participation in a conspiracy. *See United States v. Davis*, 226 F.3d 346, 354 (5th Cir. 2000) ("A [co-]conspirator need not know all the details of the unlawful enterprise, so long as he knowingly participates in some way in the larger objectives of the conspiracy."). The record demonstrates that Appellants took specific actions, and voluntarily affiliated with a group that undertook specific actions, that Appellants knew would cause Solis's detention and transportation. *See Paul*, 142 F.3d at 840-41. We recognize that there is some conflicting evidence regarding Appellants' knowledge of and participation in the scheme to kidnap Solis. However, drawing all reasonable inferences and resolving all credibility determinations in favor of the verdict, we cannot disturb the jury's finding that Appellants knowingly and voluntarily participated in Solis's kidnapping.

### B.

Cardenas argues that the Government failed to establish that he participated in Solis's kidnapping for "ransom, reward, or otherwise," a necessary element of a kidnapping offense. *See* 18 U.S.C. § 1201; *Barton*, 257 F.3d at 439. "Or otherwise" encompasses "any benefit a captor might attempt to receive." *United States v. Webster*, 162 F.3d 308, 328 (5th Cir. 1998) (citing *Gooch v. United States*, 297 U.S. 124, 128 (1936)). "The benefit, 'for ransom, reward, or otherwise,' merely adds purpose to the act of holding." *Id*. at 330.

The evidence establishes that the participants of the kidnapping intended to settle a grievance with Solis. This reason is sufficient to establish that

No. 08-40186

Cardenas obtained some benefit from the kidnapping, thus the district court did not err in denying his motion for judgment of acquittal.

## C.

Cabrera argues that the evidence was insufficient to sustain his conviction of brandishing a firearm during Solis's kidnapping.[2] "[A]ny person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence," be sentenced to varying terms of imprisonment based on the type of firearm or the nature of its use. 18 U.S.C. § 924(c)(1)(A).

Cabrera admits that he was in possession of a firearm, but contends that his use of a firearm was not necessarily in association with the kidnapping of Solis. The record establishes that Cabrera possessed a firearm while standing guard outside the pool house, inside in the main room of the pool house during Solis's questioning, and that the 9mm Cabrera possessed was later used to shoot Solis. This evidence is sufficient for a rational trier of fact to have found beyond a reasonable doubt that Cabrera brandished a firearm during the predicate offenses.

## III.

Cardenas argues that the district court's jury instructions misstated the law and confused the jury. This court reviews challenges to jury instructions for abuse of discretion. *See Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002). We will reverse the judgment "only if the charge as a whole creates a

---

[2] On appeal, Cabrera and Cardenas challenge the sufficiency of the evidence to support their convictions on this count on the basis that the evidence was insufficient to support the predicate offenses. *See United States v. Burton*, 324 F.3d 768, 770-71 (5th Cir. 2003). Because the evidence supports the convictions on the predicate offenses, we do not address this argument.

substantial doubt as to whether the jury has been properly guided in its deliberations." *Id.* (citation omitted). We will not disturb the judgment if the instruction is "a correct statement of the law" and "clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005) (quoting *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002)). "Perfection is not required as long as the instructions were generally correct and any error was harmless." *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003) (citation and footnote omitted). The district court has "great latitude" when instructing the jury on the relevant charge. *See id.*

### A.

Cardenas first asserts that the district court erred when instructing the jury by failing to require that it find Cardenas guilty of willful transportation. 18 U.S.C. § 1201(a)(1) prohibits the kidnapping of any person who is "willfully transported in interstate or foreign commerce." Cardenas contends that the district court blended two elements of the kidnapping statute—the jurisdictional requirement that the defendant cross a state or international boundary, with the mens rea requirement that the victim was willfully transported. *See Webster*, 162 F.3d at 330 ("The 'interstate commerce' serves as a mere jurisdictional hook . . . . The essence of a kidnaping is a non-consensual transporting and holding, done wilfully or knowingly[.]").

The district court gave the jury the following contested instruction:

> Kidnapping means that a person is held, kept, detained, and confined against his will. That's what kidnapping means . . . . In the federal system . . . it needs the other element of being transported. And the reason for that is to convert it into a federal case . . . . [W]hat the statute does is first define kidnap, and then i[t] says in order to make it a federal case it has to [ ] cross a state or

No. 08-40186

national boundary. That's what converts it into a federal crime.

Cardenas asserts that this instruction left the jury with the impression that mere transportation over a border fulfills the element of willful transportation.

However, the district court also instructed the jury:

> Now, here's what the government has to prove beyond a reasonable doubt. First of all, that contrary to law, this victim was kidnapped, seized, and confined on this particular occasion. Secondly, that the kidnapping was done for some purpose or benefit . . . . Thirdly, that the Defendant was then willfully transported while still being under seizure, under kidnapped [sic], under confinement. And finally that that transportation crossed . . . a foreign boundary.

This instruction closely tracks the language found in the Fifth Circuit Pattern Jury Instruction for a kidnapping offense, which separates the element of willful transportation from the requirement that the victim be transported in foreign or interstate commerce. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.58 (West 2001); *see also United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) ("It is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law."). The district court further instructed the jury that they must find that the Appellants provided "active assistance and participation in the scheme of transporting." The district court instructed the jury that "if a person joins in and performs and does something with the intent to commit the particular crime, then the law holds him responsible for the acts and conduct of the other persons . . . as long as he had the same common purpose [as] they did . . . ." The court told the jury that Appellants did not have to have knowledge that Solis would be crossing a border, but that

9

No. 08-40186

> [Appellants] had to have known that they were assisting a crime of forcibly detaining this person, holding him against his will with the ultimate idea of removing him somewhere . . . . [Y]ou have to find that every element of the crime was committed and that each defendant somehow particularly . . . voluntarily and knowingly did something to assist the [commission of the offense].

Finally, in response to a jury note, the district court restated the elements for the offense, again using language nearly identical to the pattern jury instruction, and defined "willfully" as "acting voluntarily with the intent to violate the law."

The district court's instructions informed the jury of the mens rea requirement of the kidnapping statute separate from the jurisdictional element, by requiring that the jury find that Appellants had the intent that Solis be transported. When read as a whole, the district court's instructions do not create a substantial doubt as to whether the jury was properly guided in its deliberations. *See Dahlen*, 281 F.3d at 494. Because the instructions were generally correct and instructed the jurors on the principles of law applicable to the facts of the case, we find no reversible error.[3] *See Freeman*, 434 F.3d at 377.

B.

Cardenas also argues that the district court directed a verdict in favor of the Government with respect the "ransom, reward, or otherwise" element of the kidnapping statute. *See* 18 U.S.C. § 1201. Specifically, Cardenas argues that the district court impermissibly commented on the Appellants' motive for kidnapping.

---

[3] Although the instructions here do not warrant reversal, we emphasize that the trial court should instruct the jury as clearly as possible that to find the defendant guilty of the crime of kidnapping, it must be convinced that the government has proved each of the essential elements beyond a reasonable doubt. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.58 (West 2001).

No. 08-40186

Because Cardenas did not raise this objection before the district court, we review only for plain error. *See Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009); FED. R. CRIM. P. 30(d). An instruction may be reversed for plain error if (1) it was erroneous; (2) the error was plain; and (3) the plain error affected the substantial rights of the defendant. *See United States v. Betancourt*, 586 F.3d 303, 306 (5th Cir. 2009). This court may use its discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alteration in original).

A judge may not direct a verdict of guilty, and to do so is plain error. *See United States v. Saenz,* 747 F.2d 930, 944 (5th Cir. 1984). We must determine whether "the district judge's actions, viewed as a whole . . . amount[ed] to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *United States v. Lankford*, 196 F.3d 563, 572 (5th Cir. 1999) (quoting *United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994)).

We do not find that the district court's comments to the jury when giving the instructions amounted to a partial directed verdict. The contested instruction reads:

> [Y]ears ago, the [kidnapping] statute [required a] ransom . . . but . . . it was changed to put ["]or otherwise["]. And the law there is that ["]or otherwise["] means virtually any reason at all. That there is some purpose for . . . kidnapping the person. It doesn't have to be money . . . . There has to be some purpose, whether it's legal or illegal, that the actors thought was a sufficient motive to cause them to do what they did. So, for example, whatever was the motive, and I agree with one of the lawyers that . . ., and again, **this is my opinion, which you are not bound by.** But it seemed to me, as you listened to this case, the motive sort of was a rumor . . . or a threat against somebody.

11

No. 08-40186

> But it . . . seems to me that one conclusion you **could**
> draw is that the motive was simply- for whatever
> reason, was to. . . punish this person, to harm him and
> dispose of him because of some perceived grievance.
> And that would be the ["]or otherwise["] . . . . So I'll say
> to you there's no evidence here of a ransom or a reward.
> **And the question is, is there some other motive . .**
> **. that motivated the people to . . . [kidnap Solis]**.

(emphasis added).

Taking the court's instructions as a whole, its statements regarding the motive for the kidnapping amounts to a comment on the weight of the evidence, not a directed verdict. "It is within [the trial judge's] province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, . . . provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Saenz*, 747 F.2d at 945 (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)). The district court stated that its comment was only an opinion with which the jury was not bound to agree. *See United States v. Inocencio*, 40 F.3d 716, 730 (5th Cir. 1994) ("[A] judge may comment on the evidence to facilitate the jurors' task of reaching a proper verdict so long as the judge advises them that they are not bound by his comments."). Further, the district court gave general instructions that the jury should base its decision on the law and the evidence, and that it was free to accept or reject the evidence and interpret such evidence as it saw fit. *See United States v. Hefferon*, 314 F.3d 211, 222 (5th Cir. 2002) ("Juries are presumed to follow their instructions."). The court instructed the jury that it had the ultimate authority to determine Appellants' guilt or innocence, and properly instructed the jury that it must find Appellants guilty on all elements of the charges. *See Saenz*, 747 F.2d at 944-45. Thus, the district court's comments were not sufficiently "quantitatively and qualitatively substantial" to pose any threat

12

No. 08-40186

to the fairness of Appellants' trial. *Lankford*, 196 F.3d at 572. Because Cardenas has failed to demonstrate that the district court plainly erred in instructing the jury on his motive for kidnapping Solis, or that any error affected his substantial rights, we find no reversible error.

IV.

Cabrera asserts that the district court erred in the admission of certain evidence. Because Cabrera did not object to the admission of the evidence before the district court, this court reviews only for plain error. *See United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006). To demonstrate plain error, Cabrera must show that the error was clear or obvious and that it affected his substantial rights. *See id*. This court will not correct an error unless it "has a serious effect on the fairness, integrity, or public reputation of judicial proceedings." *United States v. Alvardo-Santilano*, 434 F.3d 794, 795 (5th Cir. 2005).

Cabrera argues that the district court erred in admitting evidence that he pawned jewelry worn by Solis; evidence establishing the nature and extent of Solis's physical injuries; and evidence characterizing Cabrera as a security guard during Solis's interrogation. Cabrera has failed to demonstrate that admission of this evidence was clear or obvious error or that it affected his substantial rights. We find no reversible error in the district court's evidentiary rulings.

V.

We find that the evidence was sufficient to support the jury's convictions of the Appellants on all counts. The district court's order denying Appellants' motion for judgment of acquittal is affirmed. We further find no reversible error in the district court's instructions to the jury or its evidentiary rulings.

AFFIRMED

13