UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 94-20106

UNITED STATES of AMERICA,

Plaintiff-Appellee,

versus

FREDRICK COMO

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

(May 12, 1995)

Before KING, GARWOOD, and BENAVIDES, Circuit Judges.

BENAVIDES, CIRCUIT JUDGE:

Fredrick Como appeals his conviction and sentence for
possession of a firearm by a convicted felon.  18 U.S.C. § 922(g).
He contends that the district court erred by failing to suppress
certain evidence and by increasing his offense level for
obstructing justice.  Finding the district court properly declined
to suppress the evidence and enhanced his sentence, we AFFIRM.

I.  FACTS AND PROCEDURAL HISTORY

On February 2, 1992, a Harris County Sheriff's Deputy, Ray
Dupont, stopped Como's vehicle after he almost struck Dupont's car
while making a U-turn through an intersection.  Dupont arrested
Como, the sole occupant of the vehicle, for reckless driving,
handcuffed him, and placed him in the patrol car.  Como repeatedly
told Dupont that he was assisting the Houston Police Department

(HPD) in a homicide investigation and should be released. After calling a towing service to transport Como's vehicle, Dupont inventoried its contents. During the inventory search Dupont took the keys from the ignition and opened the trunk, at which time he observed the outline of guns through a plastic bag. Dupont found two loaded guns, ammunition, and two ski masks inside the bag. Como told Dupont that the guns were part of the homicide investigation. Como stated that he witnessed two suspects hide the guns, so he retrieved them and was on his way to call a sergeant with the Houston Police Department who was in charge of the investigation. At the station, Dupont learned that Como was a convicted felon and confirmed that Como had been assisting Sergeant Burmester in a homicide investigation. Como was released at that time, but later charged in an indictment with the present offense.

Prior to trial, Como moved to suppress the guns seized from the car and the oral statement he made to Deputy Dupont. The district court held a hearing on the motion to suppress, and Como testified that he did not make a U-turn or commit any other traffic violation. He also denied he told Dupont that he was assisting in a homicide investigation. Thereafter, the court denied the motion, adopting Dupont's testimony. Como did not testify at trial or present any witnesses. At sentencing, the district court enhanced Como's offense level for obstruction of justice under U.S.S.G. §3C1.1 based on its finding that Como testified untruthfully at the suppression hearing. Como appeals his conviction based on the

denial of his motion to suppress evidence and his 96-month sentence based on the offense level enhancement for obstruction of justice.

II.  OBSTRUCTION OF JUSTICE ENHANCEMENT CLAIM

Como argues that the district court erred in enhancing his offense level for obstruction of justice without sufficient factual findings relative to his "untruthful" testimony at the suppression hearing.  U.S.S.G. §3C1.1 provides for an enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense."  Though the court may not penalize a defendant for denying his guilt as an exercise of his constitutional rights, a sentence may be enhanced if the defendant commits perjury.  United States v. Laury, 985 F.2d 1293, 1308 (5th Cir. 1993).  A defendant testifying under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony."  United States v. Dunnigan, __ U.S. __, 113 S.Ct. 1111, 1116 (1993).  We review a district court's finding of obstructive conduct for clear error.  Laury, 985 F.2d at 1308.

If the defendant objects to a sentence enhancement for obstruction of justice based on his testimony, the district court must review the evidence and make independent findings necessary to establish a willful obstruction of justice, or an attempt to do so, under the perjury definition.  Dunnigan, 113 S.Ct. at 1117.  A separate and clear finding on each element of the alleged perjury, although preferable, is not required.  Laury, 985 F.2d at 1308.

-3-

Specifically, Como contends that the district court failed to address the materiality of his falsehoods. "Material," as defined in the commentary to the sentencing guidelines, "means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. §3C1.1 comment. (n.5). At Como's sentencing hearing, the district court made the following findings regarding Como's alleged perjury, stating:

> Of course, I presided over the suppression hearing and the trial. I'm familiar with the statements made and the position taken, although or albeit through cross-examination during the trial. And I do not believe that Mr. Como was totally candid and truthful at the suppression hearing as established by other testimony and evidence presented.

In Dunnigan, Supreme Court approved the following findings made by the district court:

> The court finds that the defendant was untruthful at trial with respect to material matters in this case. [B]y virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

Dunnigan, 113 S.Ct. at 1117 (emphasis and brackets in opinion). The Supreme Court concluded that there was support in the record for those findings because numerous witnesses contradicted the defendant regarding so many facts on which she could not have been mistaken. Id.[1]

_____

[1] We have affirmed an obstruction of justice assessment based on the following findings by a district court:

> Obviously if the jury's verdict means anything, then [the defendant] did commit perjury when he testified,

-4-

Como argues that his testimony at the suppression hearing was not material because it did not relate to the primary issue raised in his motion to suppress; i.e., the lack of inventory procedures in the Harris County Sheriff's Office. This argument, however, ignores counsel's argument at the suppression hearing regarding the reasonableness of the arrest for a traffic stop. Contradicting Deputy Dupont's testimony regarding the U-turn, Como testified that he drove straight through the light went it became green. Como testified that Dupont gave no reason for stopping him, and he was not aware of any traffic violation that he may have committed.

The court below did not expressly find that Como's falsehoods were material. This Court, however, has upheld an implicit finding of materiality when it determined that the false testimony "was obviously `material' in that it was clearly `designed to substantially affect the outcome of the case.'" United States v. Cabral-Castillo, 35 F.3d 182, 187 (5th Cir. 1994), cert. denied, __ U.S. __, 115 S.Ct. 1157 (1995).

The government contends that the court's finding that the false statements were material may be inferred from the context of

and I believe the jury's verdict means exactly what it found. . . . [I]f the jury had been convinced that [the defendant] had obtained the money as he indicated, it may have affected the determination of guilt. Statements made by the defendant were made in an effort to obstruct or impede the administration of justice during prosecution.

Laury, 985 F.2d at 1309; see also United States v. Storm, 36 F.3d 1289, 1295-96 (5th Cir. 1994) (district court found that defendant had committed perjury during investigation and prosecution of his offense about material fact), cert. denied, 63 USLW 3771 (U.S. April 24, 1995) (No. 94-7737).

the exchange among the attorneys and the judge at the sentencing hearing.  We agree.

During the sentencing hearing, the court referenced the government's motion for upward departure which was based on the arguments that Como's criminal history category score did not accurately reflect his criminal history and that Como had obstructed justice by perjuring himself during the suppression hearing.  The court stated that it could upwardly depart from the guideline range or make a finding of obstruction of justice, which would increase the guideline range.  The court then invited any further arguments or comments regarding the motion.

In regard to the issue at bar, the government argued that:

[Como] completely disregarded his oath on the stand at the suppression hearing and took one position that the guns were planted on him, that he wasn't properly stopped by the police officers, and at the trial, his attorney took a completely different position with respect to the case; that being that Mr. Como was working as a police informant and that he had placed willingly and voluntarily those guns in the back of his -- in the trunk of his car to further an HPD homicide investigation.

In response, defense counsel argued as follows:

First of all, the defense that was put on was really through cross-examining the Government's witnesses.  It was through asking them questions about what they did and what Mr. Como was doing.  Mr. Como did not testify during the course of the trial.

He did testify at the suppression hearing.  And at the suppression hearing, Mr. Como's testimony was really -- my intent to use his testimony was focused towards the circumstances surrounding his stop.  The Court might recall that it was the Government that started questioning him about the guns and how -- and what he may have said to the Harris County Sheriff's deputy.

Now, that wasn't something that I was using Mr. Como to give evidence to the Court . . . about that.  What I

was focusing on was the circumstances of his stop, and I wasn't trying to seek suppression of those statements based on his denial. It would be -- it would completely eviscerate his attempt to suppress statements if he denied that he had ever made them.

The question is whether these -- this was even <u>material</u> to the proceeding also, Your Honor, because at the time of the suppression hearing what I focused on was whether the Harris County Sheriff's Department had valid inventory procedures, which would have nothing to do whatsoever with whether or not Mr. Como told the deputy what the deputy said he was told.

And so I don't know how what Mr. Como said <u>might have tended to have influenced the outcome of the suppression hearing or of the trial</u>, given the arguments that were raised at the suppression hearing and at the trial, and the fact that he did not testify.

(emphasis added).

Defense counsel then specifically mentioned that "[t]he Guideline commentary itself makes clear under . . . Note 3(f) that he must provide materially false information."[2] The government replied that Como misrepresented the circumstances surrounding the traffic stop "[w]hich did impact the suppression hearing because if the stop had been unlawful as Mr. Como claimed, the guns would have been suppressed, and that would have a material bearing on the case."

At that point during the sentencing hearing, the court articulated the previously quoted findings:

Of course, I presided over the suppression hearing and the trial. I'm familiar with the statements made and the position taken, although or albeit through cross-examination during the trial. And I do not believe that Mr. Como was totally candid and truthful at the

---

[2] U.S.S.G. §3C1.1, comment. (n.3(f)) lists that providing materially false information to a judge or magistrate is an example of the types of conduct to which the enhancement applies.

-7-

suppression hearing as established by other testimony and evidence presented.

Both the government and defense counsel made arguments regarding the materiality of Como's testimony. Although the court made no explicit finding of materiality, viewed in the context of the attorneys' argument, it is apparent that the court found the testimony material. Moreover, the record indicates that Como's false testimony at the suppression hearing was "material" as defined in the guideline commentary, and thus, it is sufficient to uphold an implicit finding of materiality by the district court. Cabral-Castillo, 35 F.3d at 187.

### III. FOURTH AMENDMENT CLAIM

Como contests the denial of his motion to suppress on the basis that the Harris County Sheriff's Department provides no "single familiar standard" to guide its officers in conducting inventory searches of impounded vehicles, but instead gives its officers complete discretion to determine when and how to conduct such searches.

"In reviewing the district court's ruling on a motion to suppress based on live testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or influenced by an incorrect view of the law." United States v. Gallo, 927 F.2d 815, 819 (5th Cir. 1991). "However, we must apply a de novo standard of review to determine whether this was a valid inventory search." Id.

"An inventory search is valid, provided it is conducted under an established police department inventory policy." United States

-8-

v. Seals, 987 F.2d 1102, 1107 (5th Cir.), cert. denied __, U.S. __, 114 S.Ct. 155 (1993).  "When the police acquire temporary custody of a vehicle, a warrantless search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to `standard police procedures' and for the purpose of `protecting the car and its contents.'"  Id.  (internal quotation marks and citation omitted).  "Police may lawfully conduct such searches while the vehicle is still on the highway awaiting towing."  United States v. Prescott, 599 F.2d 103, 105 (5th Cir. 1979).  And, "[p]olice officers may open closed containers found within locked trunks while conducting routine inventory searches of impounded vehicles."  United States v. Judge, 846 F.2d 274, 276 (5th Cir. 1988).

The exercise of police discretion does not violate the Fourth Amendment "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity."  Colorado v. Bertine, 479 U.S. 367, 375, 107 S.Ct. 738, 743 (1987).  "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself."  Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635 (1990).  Allowing an officer to exercise his judgment based on concerns related to the objectives of an inventory search does not violate the Fourth Amendment.  Id.  "If there is no showing of bad faith or for the sole purpose of investigation, evidence discovered during

an inventory search is admissible." Gallo, 927 F.2d at 819 (citing Colorado v. Bertine, supra).[3]

Deputy Dupont testified that it is his Department's established procedure to inventory a vehicle, for the purpose of "safekeeping", whenever a vehicle is separated from its driver; and that Department procedures give the officers discretion to decide whether a locked container should be opened or whether to search the locked trunk of the vehicle. Dupont testified that, after he had called for a towing service, he followed these procedures in conducting the inventory search of Como's vehicle; and that he was not looking for evidence when he conducted the inventory, but was instead attempting to locate, record, and secure personal valuables.

To support his contention that the Department allows its officers too much discretion while conducting an inventory search of an impounded vehicle, Como points to the lack of evidence of a written policy or procedure. There is, however, no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient. United States v. Skillern, 947 F.2d 1268, 1275 (5th Cir. 1991), cert. denied, 503 U.S. 949, 112 S.Ct. 1509 (1992); United States v. Andrews, 22 F.3d 1328, 1336 (5th Cir.), cert. denied, __ U.S. __, 115 S.Ct. 346 (1994).

---

[3] Como does not allege bad faith on the part of Deputy Dupont.

Como further argues that this Court's recent decision in Andrews, 22 F.3d 1328, is not dispositive of his claim. Como's argument fails. In Andrews, we explained that the Supreme Court's decisions in Wells and Bertine, supra, did not "require[ ] a law enforcement agency's inventory policy to address specifically the steps that an officer should take upon encountering a closed container." Andrews, 22 F.3d at 1336. Thus, contrary to Como's argument, the inventory policy need not dictate when the officer may open a locked trunk. "The requirement to be distilled from the line of cases culminating in Wells is that inventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." Id. (citation omitted). Dupont testified that the Department's established procedure is to inventory a vehicle anytime it is separated from its driver for the purpose of "safekeeping." Accordingly, because the Andrews requirement is met by the inventory search policy of the Harris County Sheriff's Department (i.e., because the policy behind the search is safekeeping, rather than simply searching for evidence), Como has not shown that Dupont violated the Fourth Amendment by searching his locked trunk.[4] The district court properly denied the motion to suppress.

CONCLUSION

---

[4] We note additionally that, upon opening the locked trunk, Dupont "could see the outline of the guns through the bag." Thus, Dupont found the guns without opening any closed containers.

For the above stated reasons, the judgment of the district court is AFFIRMED.