# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-11057
Consolidated with
No. 08-11084
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FREDDY LEE FOOTS

Defendant-Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC Nos. 3:07-CR-285-1; 3:88-CR-121-ALL

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Freddy Lee Foots was convicted by a jury for interfering with commerce by threats or violence, and using, carrying, and brandishing a firearm during or in relation to a crime of violence. Foots now asks this court to vacate his two convictions and remand to the district court for resentencing. He contends that the police conducted an unlawful search and

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

seizure in violation of the Fourth Amendment, that there was insufficient evidence to establish use of a real firearm, and that his sentence was unreasonable. We AFFIRM.

## I. BACKGROUND

On the morning of September 5, 2007, an armored transport car unloading money at a Compass Bank in Dallas, Texas was robbed. Sergio Lopez, one of the men delivering the money to the bank, testified that a dark-colored minivan approached and two individuals wearing masks exited the van, pointing long guns at him. Fearing for his life, Lopez told them to take the money, ran to a nearby business, and called 911. The two suspects took $1,977,952.90 from the armored car, fled from the bank, and abandoned their minivan in a library parking lot. A library employee told police that he observed three black males removing items from a minivan and placing them into a four-door sedan.

A confidential source later contacted the Dallas Police Department with the information that Freddy Lee Foots was one of the men who had robbed the armored car. The source told police that after the robbery, Foots bought a black, four-door Mercedes Benz and gave the police an address where Foots could be found. The police set up surveillance at this address, which was revealed by a public records search to be the address of Foots's girlfriend, Virginia Owens. The police observed a black, four-door Mercedes at, and then leaving, Owens's home. When questioned about the Mercedes, Owens told police that Foots had just purchased it.

On September 14, a Reeves County Sheriff's deputy observed a black Mercedes with no visible registration traveling west on Interstate 20. When the deputy tried to stop the Mercedes for a traffic violation, the driver refused to stop, and a high-speed chase ensued. After traveling at sufficiently high speeds to evade law enforcement, officers later located the Mercedes and Foots at an

Econo Lodge Motel in Van Horn, Texas. Foots was arrested and transported from the scene.

Deputy Ray Nunez of the Culberson County Sheriff's Department searched the Mercedes. He used the keys to unlock and open the trunk. In the trunk he found and opened a closed blue duffel bag and discovered $467,022 in United States currency banded with labels that read "Federal Reserve Bank" and "Compass Bank."

The grand jury indicted Foots for interference with commerce by threats or violence in violation of 18 U.S.C. § 1951(a) ("Count 1"), and using, carrying, and brandishing a firearm during or in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 2"). Before trial, Foots filed a motion to suppress the evidence seized during the search of his Mercedes. After a hearing, the district court denied Foots's motion, concluding that the search was a valid inventory search. The case went to trial and the jury found Foots guilty as charged. At sentencing, the district court upwardly varied on both counts from the advisory Guidelines range, sentencing Foots to 240 months' imprisonment on Count 1 and 110 months' imprisonment on Count 2, with the terms to run consecutively. The district court also revoked supervision and sentenced Foots to 36 months' imprisonment, to run concurrently to the term of imprisonment imposed on Counts 1 and 2. Foots timely appealed.

## II. DISCUSSION

### A. Motion to Suppress

As his first ground for appeal, Foots contends that the district court erred by concluding that the search of his Mercedes was a valid inventory search and consequently denying his motion to suppress. Foots submits that the Government presented insufficient evidence to show that the search was conducted pursuant to standardized procedures and presented no evidence

demonstrating that the police were authorized to search closed containers inside a locked trunk.

We review the district court's fact findings on a motion to suppress for clear error and its legal conclusions de novo.[1] *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999). "We will not find a district court's factual determination to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been committed[.]" *United States v. Andrews*, 22 F.3d 1328, 1333 (5th Cir. 1994). We view the evidence in the light most favorable to the party that prevailed below, here the Government. *Id.* "[T]he district court's denial of the motion to suppress 'should be upheld if there is any reasonable view of the evidence to support it.'" *Gonzalez*, 190 F.3d at 671 (quoting *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993)).

"The fourth amendment proscribes . . . unreasonable searches and seizures. To be reasonable a search must normally be conducted pursuant to a warrant, but courts have long recognized an exception to the warrant requirement for so-called 'inventory searches' of automobiles." *Andrews*, 22 F.3d at 1333-34 (quoting *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979)). Inventory searches are excepted from the warrant requirement because they are not designed to uncover evidence of criminal activity and because they serve

---

[1] The Government urges this court to find waiver, or at the very least review for plain error only, because Foots's supplemental motion to suppress and his argument at the suppression hearing focus not on his initially pleaded theory that the police performed an invalid inventory search, but rather on a subsequently pleaded theory that the police performed an invalid search incident to arrest.

We first note that Foots does not argue to this court that the search constituted an unconstitutional search incident to arrest, and therefore we will not consider that theory here. As for Foots's argument that the search was an invalid inventory search, we decline to find waiver or apply the heightened plain-error standard of review. By filing a supplemental motion, rather than an amended one, Foots indicated an intent to add to, rather than supplant, his prior motion. Moreover, "[w]here a fundamental constitutional right . . . is concerned, [this court] indulge[s] every reasonable presumption against waiver." *United States v. Cano*, 519 F.3d 512, 517 (5th Cir. 2008). As such, we will review the district court's denial of Foots's motion to suppress.

three "caretaking purposes": "to protect the owner's property while it is in police custody, to protect the police against claims of lost or stolen property, and to protect the police and the public from potential danger." *Id.* at 1334. Inventory searches must be conducted according to standard regulations and procedures, consistent with the proper purpose of a noninvestigative inventory search. *Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *Colorado v. Bertine* 479 U.S. 367, 374 (1987). In other words, "inventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995) (quoting *Andrews*, 22 F.3d at 1336).

Foots relies heavily on *United States v. Judge*, 846 F.2d 274 (1988), to show that the inventory search of his Mercedes violated the Fourth Amendment. In *Judge*, agents from the Drug Enforcement Administration ("DEA") conducted an inventory search of Judge's vehicle. *Id.* at 275. They opened the trunk, opened a closed bag inside the trunk, and discovered $65,000 in cash. *Id.* The only testimony before the district court was that the standard procedure is to inventory seized vehicles either at the scene or at the Government's parking garage. *Id.* at 276. On appeal, this court held that a police officer conducting an inventory search may open a closed container found inside a locked trunk so long as the search is being conducted pursuant to standardized police caretaking procedures. *Id.* Because the Government, by its own admission, failed to produce any evidence that the DEA agents relied on standardized criteria requiring that closed containers be opened during an inventory search, it was impossible to discern whether the inventory search was constitutional under *Colorado v. Bertine*, 479 U.S. 367, 740-42 (1987) (holding that an inventory search is reasonable when it is conducted according to standardized criteria). *Id.* Accordingly, the case was remanded to the district court to determine whether DEA procedures required the opening of closed containers to inventory

their contents. *Id.* at 277. If not, then a new trial was mandated and the $65,000 had to be suppressed. *Id.* at 277.

Since *Judge*, both the Supreme Court and this court have further elaborated on what constitutes a constitutional inventory search. In 1990, the Supreme Court decided *Wells*, which involved an inventory search conducted by a highway patrol trooper. 495 U.S. at 2. The trooper opened the trunk of a car, opened a locked suitcase in the trunk of the car, and discovered a garbage bag containing a large amount of marijuana. *Id.* The record contained no evidence of any highway patrol policy on the opening of closed containers found during inventory searches. *Id.* at 3. The Court held that absent such a policy, the search was not sufficiently regulated to satisfy the Fourth Amendment, and, therefore, the marijuana was properly suppressed. *Id.* at 5. The Court reiterated, however, that "'nothing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *Id.* at 3-4 (quoting *Bertine*, 479 U.S. at 375).

In 1994, this court decided *Andrews*,[2] involving a police officer who conducted a routine inventory search of Andrews's vehicle, found a red spiral notebook, and searched the notebook page-by-page for relevant information. 22 F.3d at 1332. Uncontradicted testimony at trial established that the police department required its officers to conduct inventory searches, including the completion of inventory forms, for the purpose of protecting the city from claims of lost property. *Id.* at 1335. Based on this evidence, we upheld the inventory search as constitutional. *Id.* at 1333-37. We found that opening a notebook to

---

[2] Foots argues in his reply brief that *Andrews* and *Como* predate *Wells*, and therefore to the extent they conflict with *Wells*, they have been overruled. Neither *Andrews* nor *Como* predate *Wells*. The Supreme Court decided *Wells* in 1990, and the Fifth Circuit decided *Andrews* and *Como* in 1994 and 1995, respectively. In fact, *Andrews* and *Como* not only cite to but also discuss at length the Supreme Court's decision in *Wells*.

determine whether valuables might be found between its pages was consistent with the police department's policy requiring an inventory search to protect the city from claims of lost property. *Id.* at 1333-37. Furthermore, the policy's purpose of protecting the city "sufficiently regulate[d] the discretion of its officers to prevent them from turning inventory searches into 'a purposeful and general means of discovering evidence of a crime.'" *Id.* at 1336 (quoting *Wells*, 495 U.S. at 4). We explained that *Wells* does not require a law enforcement agency's inventory policy to address specifically the steps that an officer should take upon encountering a closed container. *Id.* Rather, "[t]he requirement to be distilled from the line of cases culminating in *Wells* is that inventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *Id.* at 1336.

Our decision in *Como* reaffirmed the principles articulated in *Wells*. In *Como*, this court upheld an inventory search as constitutional where trial testimony established that it was the sheriff's department's established procedure to inventory a vehicle for the purpose of "safekeeping" whenever a vehicle was separated from its driver; that these procedures gave the officers discretion to decide whether a locked container should be opened or whether to search the locked trunk of the vehicle; that the arresting deputy followed these procedures in conducting the inventory search at issue; and that he was not looking for evidence, but was instead attempting to locate, record, and secure personal valuables. 53 F.3d at 92. This evidence was sufficient to meet the "*Andrews* requirement." *Id.* at 92.

Turning to the present case, the district court did not clearly err in finding that the inventory search was conducted in accordance with standardized procedures. At the suppression hearing, Nunez gave unrebutted testimony that it is the Culberson County Sheriff's policy "to initiate an inventory search once you are arresting the sole occupant of a vehicle," that he conducted the inventory

search pursuant to this policy, that the policy requires "inventorying the subject's property entirely" in order to find and catalog everything, and that the purpose of performing an inventory search is "to protect [the arrestee's] property or protect you, as an officer [ ], from any property being stolen or misplaced or taken from a vehicle." *See United States v. Lage*, 183 F.3d 374, 380-81 (5th Cir. 1999) (holding that an inventory search was performed in accordance with standardized procedures where the officer gave unchallenged testimony that post-arrest inventory searches are routine and performed for "liability purposes").

Moreover, because the evidence showed that the inventory search was conducted pursuant to a standardized procedure appropriately limited by a policy of safekeeping, Foots's Fourth Amendment rights were not violated. This difference from the evidence in *Judge* is critical to the outcome. There was no evidence in *Judge* – as there is here, and as there was in *Andrews* and *Como* – that the policy had a proper purpose (*i.e.* safekeeping), or that the search was in fact performed pursuant to the policy and limited by the policy's purpose. 846 F.2d at 276. Neither *Andrews* nor *Como* required a specific policy provision expressly requiring that all closed containers be opened during an inventory search. It was enough that the opening of closed containers was permissible under the inventory search policy and that an officer's discretion in determining whether to open a closed container was limited by the purpose of safekeeping. The same reasoning justifies the inventory search of Foots's Mercedes.

At bottom, we find no reversible error in the district court's denial of Foots's motion to suppress.

## B.     Motion for Judgment of Acquittal

Foots argues that the district court erred by denying his motion for acquittal on Count 2 of the indictment because the Government did not present sufficient evidence to support an element of his conviction beyond a reasonable

doubt. Specifically, Foots contends that the Government failed to establish that the guns used in the armed robbery were real firearms as opposed to toys.

Where a sufficiency argument is raised in a timely motion for judgment of acquittal, we "examin[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and ask[ ] whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Garcia*, 567 F.3d 721, 731 (5th Cir. 2009). "'It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bell*, 678 F.2d 547, 549 & n.3 (5th Cir. Unit B 1982) (en banc)). "'A jury is free to choose among reasonable constructions of the evidence.'" *Id.* (quoting *Bell*, 678 F.2d at 549).

In *United States v. Lankford*, 196 F.3d 563 (5th Cir. 1999), this court addressed what constitutes sufficient evidence to establish that a real firearm was used in the commission of a crime. *Id.* at 576. Like Foots, Lankford was convicted of, among other things, violating § 924(c). *Id.* At trial, the Government did not admit an actual gun into evidence, and the victim testified that she did not know whether the weapon Lankford was carrying was in fact a "real" gun. *Id.* Nonetheless, this court held that a sufficient basis for a jury finding that Lankford used or carried a firearm existed. *Id.* "The Government is not required to produce the actual weapon allegedly used, possessed, or carried and may rely on . . . the testimony of lay witnesses[ ] in its attempt to prove that a defendant used, possessed or carried a 'firearm' as that term is defined for purposes of § 924(c)." *Id.* (citing 18 U.S.C. § 921(a)(3)). While the victim testified that she did not "know" if the gun was real, she also testified that she believed the gun was real, and this was sufficient evidence from which the jury could have drawn the same conclusion. *Id.*

Here, as in *Lankford*, the Government presented sufficient evidence from which a reasonable jury could have found the guns used in the robbery were real. Although the Government did not admit an actual gun into evidence, and Lopez testified at trial that he did not know much about guns, Lopez also testified that the guns appeared real to him. Indeed, the guns appeared so real that his reaction was to tell the robbers to take the money, run away, and call 911. Under *Lankford*, this testimony was sufficient evidence from which the jury could have reached the same conclusion as Lopez – that the gun was real. Accordingly, the district court properly denied Foots's motion for judgment of acquittal.

## C. Sentencing

Foots's final contention on appeal is that his sentence was unreasonable. According to Foots, the district court erred in two respects: (1) by failing to determine his sentence for the § 924(c) conviction independently from his sentence for the § 1951 conviction, and (2) by ignoring Congress's decision to cap a defendant's sentence for § 1951 offenses at 240 months' imprisonment.

As Foots concedes, because he did not object to the reasonableness of his sentence in the district court, we review the district court's sentence for plain error only. *United States v. Dunigan*, 555 F.3d 501, 506 (5th Cir.), *cert. denied*, 129 S. Ct. 2450 (2009). Under this standard, Foots must show an error that is plain and that affected his substantial rights. *United States v. Jackson*, 559 F.3d 368, 372 (5th Cir. 2009). Even if Foots makes this showing, whether to correct the error is a decision within the sound discretion of this court, and we will not exercise that discretion unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 2959 (2008) (internal quotation marks and citation omitted).

To determine whether a district court's sentence was reasonable, we engage in a bifurcated analysis. *United States v. Herrera-Garduno*, 519 F.3d 526, 529 (5th Cir. 2008). First, we ask whether the district court committed procedural error. *Id*. Second, we consider the substantive reasonableness of the sentence imposed. *Id*.

We hold that Foots's sentence was not unreasonable. As to the procedural prong of our analysis, section 924(c)(1)(A) requires that a consecutive sentence be imposed in addition to the punishment for the crime of violence at issue; section 5G1.2(a) of the Sentencing Guidelines provides that "the sentence to be imposed on a count for which the statute . . . requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, [*see, e.g.,* § 924(c)] shall be determined by that statute and imposed independently." The district court adopted the presentence report (which calculated separately the advisory imprisonment ranges for the two counts), calculated separately the advisory ranges for the two counts again during the sentencing hearing, and imposed two separate sentences – 240 months' imprisonment on Count 1, 110 months' imprisonment on Count 2. Although we understand Foots's concerns with the district court's initial (and quickly corrected) mistaken pronouncement of his sentence at the sentencing hearing, given the applicable standard of review, we cannot conclude that the error was plain error.

Turning to the issue of substantive reasonableness, the statutory maximum for persons convicted under § 1951 is twenty years' imprisonment "on that charge." 18 U.S.C. § 1951. Foots was sentenced to the twenty-year maximum for his § 1951 conviction. Under both § 924 and the Sentencing Guidelines, Foots's accompanying sentence for his § 924(c) conviction had to be, and was, determined separately and imposed independently from his § 1951 sentence. Although the district court imposed an upward variance on both

counts, it thoroughly explained its reasons for doing so. Thus, on this record and under a plain error standard of review, Foots's sentence was not substantively unreasonable.

Accordingly, the district court's judgment is AFFIRMED.