# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 11, 2013

No. 12-10906
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE JUAN MONTELONGO,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-CR-45-2

Before BENAVIDES, CLEMENT, and OWEN, Circuit Judges
PER CURIAM:[*]

A jury convicted Jose Juan Montelongo of one count of conspiracy to distribute and possess with intent to distribute methamphetamine and one count of distribution and possession with intent to distribute methamphetamine. The district court sentenced Montelongo to concurrent life sentences and to concurrent five-year terms of supervised release. Montelongo now appeals, challenging the district court's calculation of his advisory guidelines sentencing range.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We review the district court's application or interpretation of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. *Id.* Many of the district court's factual findings in this case were based on facts set forth in the presentence report (PSR) and its addendum. "Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009) (internal quotation marks and citation omitted).

*Obstruction of justice*

Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement if the defendant willfully attempted to obstruct or impede the administration of justice by, inter alia, committing perjury. U.S.S.G. § 3C1.1 & comment. (nn.1 & 4(B)) (2011). Perjury for purposes of § 3C1.1 is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

Montelongo contends that the district court did not make the necessary predicate factual findings of perjury to uphold the enhancement. We review this challenge only for plain error because it is raised for the first time on appeal. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009); *cf. United States v. Johnson*, 352 F.3d 146, 149 n.2 (5th Cir. 2003) (plain error review not applicable where appellant did not challenge specificity of fact findings, but findings were inadequate). The district court found that Montelongo testified falsely at trial that the reason he placed an advertisement on Craig's List referencing "ice skating" was to find other methamphetamine-using sexual partners for his swinging lifestyle when he and his wife had run out

of drugs. According to Montelongo, his wife would refuse to engage in intercourse with the people who responded to the advertisement but those people would nevertheless stay and share their drugs with the Montelongos. The district court found that this testimony was material because it went to the issue of guilt or innocence and that it had been given willfully in an attempt to obstruct justice. The district court's findings concerning Montelongo's testimony were sufficient, *see Dunnigan*, 507 U.S. at 94; *United States v. Perez-Solis*, 709 F.3d 453, 469-71 (5th Cir. 2013), and Montelongo has failed to demonstrate error, plain or otherwise, in this respect.

Stating that the record supports the veracity of his account of his reason for placing the Craig's List advertisement, Montelongo argues that the district court erred in finding that he testified falsely. In light of testimony by a man who answered the advertisement that he went to Montelongo's home and that Montelongo met him in the driveway to sell him methamphetamine, the district court's factual finding is not clearly erroneous. *See Cisneros-Gutierrez*, 517 F.3d at 764. Nor did the district court clearly err in determining that the testimony was material since the drug sales to the man who answered the advertisement were the only sales that were not the subject of Montelongo's asserted affirmative defense of entrapment. *See United States v. Como*, 53 F.3d 87, 89-90 (5th Cir. 1995). Montelongo does not challenge the determination that his testimony did not result from confusion, mistake, or faulty memory and was thus given willfully to obstruct justice. Because the district court's factual findings are plausible in light of the record and because the court made sufficient predicate findings, the application of the two-level enhancement under § 3C1.1 will be upheld. *See Perez-Solis*, 709 F.3d at 469; *Cisneros-Gutierrez*, 517 F.3d at 764.

*Firearm possession*

Montelongo's offense level was increased by two levels pursuant to § 2D1.1(b)(1) based on the presence of a firearm found in a safe in the master

bedroom of Arthur Luna, one of Montelongo's drug suppliers. To apply this enhancement based on Montelongo's vicarious possession, the Government had to show by a preponderance of the evidence that Luna possessed the firearm in connection with the conspiracy in which he and Montelongo participated and that Montelongo could have reasonably foreseen that Luna would possess a weapon in furtherance of their jointly undertaken criminal activity. *See* § 1B1.3(a)(1)(B); *United States v. Zapata-Lara*, 615 F.3d 388, 390-91 (5th Cir. 2010); *United States v. Mergerson*, 4 F.3d 337, 350 (5th Cir. 1993).

With respect to possession, we will not consider Montelongo's contention that the Government did not prove that Luna knowingly possessed the weapon because it is raised for the first time in Montelongo's reply brief. *See United States v. Prince*, 868 F.2d 1379, 1386 (5th Cir. 1989). Montelongo argues that the Government did not show that necessary spatial relationship between Luna's possession of the firearm and the drug trafficking offense because there was no evidence that Luna had ever stored drugs or drug paraphernalia in his home, much less in the bedroom closet safe where the gun was found. However, the Government may prove the requisite spatial relationship by showing that the firearm was found "in the same location where drugs or drug paraphernalia are stored *or where part of the transaction occurred.*" *Zapata-Lara*, 615 F.3d at 390 (emphasis added). On the day that the gun was discovered inside Luna's house, Luna had brokered a deal in which Montelongo retrieved a half-pound of methamphetamine from a vehicle parked in front of Luna's house. This was sufficient to establish a spatial relationship between the drug trafficking conspiracy, the firearm, and Luna. *See United States v. Juluke*, 426 F.3d 323, 326, 328 (5th Cir. 2005); *United States v. Navarro*, 169 F.3d 228, 230, 235 (5th Cir. 1999). Whether the firearm was loaded, or even whether it was operable, is not dispositive. *See United States v. Jacquinot*, 258 F.3d 423, 431 (5th Cir. 2001); *United States v. Caicedo*, 103 F.3d 410, 411-12 (5th Cir. 1997); *United States v. Mitchell*, 31 F.3d 271, 278 (5th Cir. 1994). Luna's possession of the

firearm was or should have been foreseeable to Montelongo, *see United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990), and Montelongo makes no argument otherwise.  Under these facts, the district court did not err in its application of the § 2D1.1(b)(1) enhancement.

*Role in the offense*

The district court increased Montelongo's offense level by four levels under § 3B1.1(a), which applies where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a).  Montelongo concedes that, with regard to the conspiracy count, he exercised a supervisory role over his wife and over Jose Castillo.  He maintains that the PSR had to have counted Luna and Joshua Baggett as the fourth and fifth participants for purposes of the enhancement.  Montelongo argues, however, that Luna and Baggett should not be considered participants because he had only a buyer/seller relationship with those two men.  The original indictment in this case charged Montelongo, his wife, Castillo, Luna, and Baggett with the same conspiracy for which Montelongo was convicted. Montelongo's wife, Luna, and Baggett all pleaded guilty to that conspiracy charge.  To be counted as a participant for purposes of § 3B1.1(a), an individual "need only have participated knowingly in some part of the criminal enterprise." *United States v. Boutte*, 13 F.3d 855, 860 (5th Cir. 1994).  As Luna and Baggett were Montelongo's coconspirators, the district court's finding that they were participants in the criminal activity here is plausible and, thus, not clearly erroneous.  *See Cisneros-Guttierez*, 517 F.3d at 764.  Accordingly, the district court properly applied § 3B1.1(a).

*Importation*

The district court applied a two-level increase to Montelongo's offense level because the offense involved the importation of methamphetamine and Montelongo was not entitled to a mitigating role adjustment.  *See* § 2D1.1(b)(5). The enhancement was based on a statement in the addendum to the PSR that

an agent with the Drug Enforcement Administration (DEA) had confirmed by interviewing a confidential informant (CI) who was one of the sources of supply for Luna, and thus for Montelongo, that some of the methamphetamine involved in this case had come from Mexico. When Montelongo objected to the reliability of this information given that neither the DEA agent nor the CI were named in the addendum to the PSR, the Government responded that the relevant agent would be present at sentencing. At sentencing, however, Montelongo did not question the agent. Montelongo argues in this court that the Government failed to prove the fact of importation and that the statement contained in the PSR is not sufficiently reliable to be relied upon by the district court in applying the § 2D1.1(b)(5) enhancement. The PSR and its addendum were based on, inter alia, investigative reports of the DEA and other law enforcement officers, interviews with a DEA agent, and statements of witnesses; they set forth specific facts rather than bald conclusions. *See United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993). Thus, absent rebuttal evidence or a showing by Montelongo that the PSR was unreliable, the district court was permitted to rely on those findings. *See Ollison*, 555 F.3d at 164.

*Maintaining a premises for storing or distributing drugs*

Montelongo also received a two-level enhancement under § 2D1.1(b)(12), which "applies to a defendant who knowingly maintains a premises . . . for the purpose of" manufacturing, distributing, or storing a controlled substance. § 2D1.1(b)(12) & comment. (n.28). The record in this case shows that when Montelongo received methamphetamine from Luna or Baggett, it was stored in a safe in his bedroom closet. Castillo had unfettered access to Montelongo's home. On one occasion, Montelongo sold methamphetamine to a customer from his home, and on another occasion he had Castillo retrieve methamphetamine from the Montelongo residence to sell to that same customer. Additionally, Luna supplied a half-pound of methamphetamine to Montelongo's wife who, along with their minor daughter, used the home to break the methamphetamine up

into smaller amounts for distribution. Finally, a search of the Montelongo's bedroom safe revealed 18.9 grams of 99.1% pure methamphetamine, small plastic baggies, and a scale.

According to Montelongo, the district court erred in applying this enhancement because the record showed that his house was primarily used as his family's residence. For the enhancement to be applicable, however, the storing or distribution of a controlled substance "need not be the sole purpose for which the premises was maintained." § 2D1.1, comment. (n.28). It is sufficient that such storage or distribution was "one of the . . . primary or principal uses for the premises." *Id.* Under the facts of this case, it is plausible that storing or distributing methamphetamine was a principal use, rather than an incidental use, of the Montelongo residence. *See id.* Accordingly, the district court did not clearly err in determining that distribution of a controlled substance was a primary use of the residence, *see Cisneros-Gutierrez*, 517 F.3d at 764, and the application of the § 2D1.1(b)(12) enhancement was proper.

AFFIRMED.