# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2021

Lyle W. Cayce
Clerk

No. 20-50597

United States of America,

*Plaintiff—Appellee*,

*versus*

Tiffany Rene Sutton,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:20-CR-10-2

Before Clement, Haynes, and Wilson, *Circuit Judges*.
Per Curiam:[*]

Tiffany Rene Sutton pleaded guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and one count of possession with intent to distribute five grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1)

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50597

and (b)(1)(B).  On appeal, she argues that the district court erred: (1) in assessing a two-level dangerous weapon enhancement under U.S. Sentencing Guideline § 2D1.1(b)(1), (2) in failing to make particularized findings regarding her relevant conduct in the conspiracy, and (3) in disregarding her arguments for a downward variance, resulting in a procedurally unreasonable sentence.  For the following reasons, we AFFIRM in part, REVERSE in part, and REMAND for resentencing.

## I.   Background

Investigators with the Ector County Sheriff's Office Special Investigations Unit detained Sutton after surveilling a residence that was known to be involved in the sale and distribution of methamphetamine.  On the night of Sutton's detention, investigators had observed a vehicle arrive at that residence to pick up Christopher Aaron Davidson, who carried a black backpack.

Investigators initiated a traffic stop after that vehicle failed to signal and discovered Jordan Tavarez at the wheel, Sutton in the passenger front seat, and Davidson in the back seat.  The investigators detained Tavarez after a record check revealed an active warrant for her arrest.  After the investigators asked them to, both Sutton and Davidson exited the vehicle.  They searched Davidson but found no contraband on his person.  However, after Tavarez asked for a jacket from the vehicle, the investigators observed a loaded Smith and Wesson handgun located near where Davidson had been sitting.  Investigators then detained Sutton and Davidson.

The investigators conducted an inventory search of the vehicle, discovering evidence of drug trafficking, including (among other items): a purse containing a soda can with a false compartment containing heroin, actual methamphetamine, a digital scale, a paper ledger, and a small amount of currency.  They also found a backpack that contained two live 9mm

rounds, a glass smoking pipe with methamphetamine residue, a digital scale, and a large amount of baggies.

Investigators arrested Sutton. She agreed to speak to investigators. She claimed ownership of the purse but not of the seized narcotics.

A later investigation revealed that Sutton had obtained heroin and methamphetamine from her friend and roommate, Kyle Myers, who was not in the car. Like Sutton, Myers was arrested. He also agreed to speak to investigators. He admitted that he picked up the drugs, placed them in his RV, and sold methamphetamine, but he denied selling anything else. He also reported that Sutton sold drugs, but not on his behalf.

Sutton ultimately pleaded guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C §§ 846, 841(a)(1), and 841(b)(1)(A) ("Count One"), and one count of possession with intent to distribute five grams or more of actual methamphetamine, in violation of 21 U.S.C §§ 841(a)(1), (b)(1)(B) ("Count Two"). Notably, she signed a factual basis document in connection with her guilty plea in which she admitted "that she conspired with MYERS to possess with intent to distribute a quantity of Methamphetamine."

In Sutton's presentence investigation report ("PSR"), the probation officer identified Myers as Sutton's codefendant and coconspirator. Finding Sutton accountable for seventy-six thousand kilograms of converted drug weight and applying U.S. Sentencing Guideline § 2D1.1(a)(5), the PSR assessed a base offense level of 36. The total drug weight included both the drugs found in the vehicle that Sutton was a passenger in, as well as the converted drug equivalent from money found in Myers's and her residence. The PSR recommended a two-level enhancement under U.S. Sentencing Guideline § 2D1.1(b)(1) on the grounds that "a dangerous weapon . . . was possessed" in connection with her offense conduct, apparently referencing

the weapon found in the car near Davidson's seat. After a recommended three-level reduction for acceptance of responsibility, Sutton's total offense level (35) combined with her criminal history category (I) yielded a Guideline range of 168 to 210 months of imprisonment. Her convictions also carried a ten-year minimum prison term for Count One and a five-year minimum for Count Two.

Sutton objected to the two-level dangerous weapon enhancement, which the probation officer responded to in an addendum to the PSR (the "Addendum"). At sentencing, she renewed her objection to the PSR and argued for a sentence below the Guidelines range. The district court overruled the objection, found the Guidelines range "to be fair and reasonable," adopted the PSR, and, relying on the probation officer's response in the Addendum, sentenced Sutton to two concurrent terms of 168 months of imprisonment, with concurrent terms of five years of supervised release to follow. Sutton timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction over Sutton's claims under 18 U.S.C. § 3742. We have jurisdiction to review the district court's final decision under 28 U.S.C. § 1291.

For properly preserved claims of procedural error, we review the district court's interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error. *United States v. Odom*, 694 F.3d 544, 546 (5th Cir. 2012) (per curiam). We review unpreserved claims, however, for plain error. *United States v. Williams*, 620 F.3d 483, 493 (5th Cir. 2010). To prevail on such review, the defendant must demonstrate that: (1) the district court erred, (2) the error was "clear or obvious," and (3) the error affected the defendant's "substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009). If those three prongs are satisfied, we may remedy

the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (brackets and quotation omitted).

## III.    Discussion

On appeal, Sutton primarily argues that the district court erred in assessing her a two-level dangerous weapon enhancement under U.S. Sentencing Guideline § 2D1.1(b)(1).  Specifically, Sutton contends that the Government failed to show that she possessed the firearm at issue or that she was part of any joint undertaking with Davidson, who possessed the firearm. Sutton also argues that the error was not harmless because it resulted in an increased sentencing range.

Because Sutton preserved this challenge, we review the district court's interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error.  *Odom*, 694 F.3d at 546.  Under Guideline § 2D1.1(b)(1), defendants convicted of a drug trafficking offense receive a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed."[1]  For the enhancement to apply, the Government must prove possession of a firearm by a preponderance of the evidence. *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010).  "If the [G]overnment satisfies this burden, then the burden shifts and the defendant must show that it is clearly improbable that the weapon was connected to the offense."  *United States v. Rodriguez-Guerrero*, 805 F.3d 192, 195 (5th Cir. 2015).

---

[1] The enhancement "reflects the increased danger of violence when drug traffickers possess weapons," and it is warranted "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2D1.1, cmt. n.11(A) (U.S. Sent'g Comm'n 2018).

No. 20-50597

The Government can prove possession for the purposes of a § 2D1.1(b)(1) enhancement by demonstrating that the defendant "could have reasonably foreseen" that another individual involved in the commission of the offense would possess the weapon.[2] *Zapata-Lara*, 615 F.3d at 390 (quotation omitted). Because "firearms are 'tools of the trade' of those engaged in illegal drug activities," the Government can establish an inference of possession if it proves "that another participant knowingly possessed the weapon while he and the defendant committed the offense by jointly engaging in concerted criminal activity involving a quantity of narcotics sufficient to support an inference of intent to distribute." *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990) (quotation omitted). Critically, however, it must be determined that the coconspirator, in fact, knowingly possessed the weapon at issue; "only then can the court determine whether there existed the required link between the non-possessing defendant and the weapon by finding that the co-participant's possession was foreseeable to the defendant." *Zapata-Lara*, 615 F.3d at 391.

We conclude that the Government did not meet its burden. The adopted PSR and Addendum do not cite to any evidence establishing that Sutton and Davidson were coconspirators jointly involved in criminal activity, nor do they provide any analysis regarding the possession of the gun. In addition, neither the PSR nor the Addendum contained any indication or

---

[2] The Government may also demonstrate possession with evidence that the defendant "personally possessed the weapon," though it failed to do so here. *Zapata-Lara*, 615 F.3d at 390. There is no evidence that Sutton possessed the weapon; the evidence suggests that the weapon belonged to Davidson, due to its temporal and spatial proximity to him in the vehicle, with nothing suggesting it was even in Sutton's view. *See id.* (stating that personal possession may be shown by "a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant").

evidence that would support the conclusion that Davidson's possession of the firearm was reasonably foreseeable to Sutton.

Despite the lack of factual support for any of these critical questions, the Government maintains that the district court did not clearly err because the Addendum also "cited to a case with similar circumstances."[3] The Government's suggested implication, of course, is that the district court resolved this case based on findings in that allegedly analogous case. But the Addendum fails to provide any analysis demonstrating that similarity. We decline the Government's invitation to stack inference on inference to resolve issues the Addendum itself did not. *United States v. Evbuomwan*, 992 F.2d 70, 74 (5th Cir. 1993) (noting that "[w]e do not tolerate inferences based on inferences"); *see also United States v. Hammond*, 201 F.3d 346, 351 (5th Cir. 1999) (per curiam) (concluding that, to impose liability based on a third party's misconduct, a district court must make findings that: (1) the defendant agreed to jointly undertake criminal activity with those parties, (2) the misconduct by the third parties was within the scope of that agreement, and (3) the third-parties' misconduct was foreseeable to the defendant); U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.3(B) (U.S. Sent'g Comm'n 2018). We conclude that no evidence

---

[3] The case the probation officer and the district court relied on—*United States v. Montelongo*, 539 F. App'x 603 (5th Cir. 2013) (per curiam)—is not as similar as the Government suggests. In fact, that case is readily distinguishable. In *Montelongo*, the district court explicitly concluded that the coconspirator "possessed the firearm in connection with the conspiracy in which he and [the defendant] participated and that [the defendant] could have reasonably foreseen that [the coconspirator] would possess a weapon in furtherance of their jointly undertaken criminal activity." *Id.* at 606–07. Unlike *Montelongo*, the district court here did not establish (1) who possessed the gun; (2) whether Sutton and Davidson jointly undertook a criminal activity; or (3) whether Sutton could have reasonably foreseen Davidson would possess the gun in furtherance of such a conspiracy. In short, many of the necessary findings in *Montelongo* are notably absent in this case.

submitted supported this enhancement; accordingly, we reverse the district court's application of the two-level dangerous weapon enhancement, necessitating a remand for resentencing.[4]

Sutton makes two other arguments, both of which are unpreserved and lack merit. First, Sutton argues that the district court erred in failing to make particularized findings regarding her relevant conduct concerning the charge of conspiracy to possess with intent to distribute a controlled substance.[5] However, by adopting the PSR, the district court made implicit findings regarding Sutton's relevant conduct, including (1) that Myers and Sutton were coconspirators in a conspiracy to possess with the intent to distribute controlled substances; (2) that Myers's possession of distributable amounts of controlled substances and the paraphernalia of distribution was "within the scope of that agreement"; and (3) that—given their conspiracy to distribute—Myers's possession of distributable quantities was reasonably foreseeable to Sutton. *See United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir. 1994) (acknowledging that a district court can "make implicit findings by adopting the PSR"). Because the district court's adopted findings do not leave us to "second guess" the basis for its decision,[6] the court did not plainly

---

[4] The Government does not contend that such an error would have been harmless.

[5] Sutton also argues that the district court plainly erred in failing to consider her personal drug use when calculating the drug quantity attributable to her. This argument is foreclosed by *United States v. Clark*, in which we held that a court may consider amounts of drugs for personal use when calculating a defendant's base offense level in a drug conspiracy case. 389 F.3d 141, 142 (5th Cir. 2004) (per curiam). Sutton's contention that *Clark* has been overruled "*sub silentio*" is unpersuasive.

[6] Notably, in connection with her guilty plea, Sutton candidly *admitted* "that she conspired with MYERS to possess with intent to distribute a quantity of Methamphetamine."

err in failing to make particularized findings regarding Sutton's relevant conduct. *Id.* (internal quotation marks omitted).

Second, Sutton argues that the district court imposed a procedurally unreasonable sentence by disregarding her arguments for a downward variance. We disagree. The district court provided Sutton a procedurally adequate explanation by listening to each argument, reading letters written on her behalf by third parties, considering and adopting the PSR, expressly finding the Guidelines range to be fair and reasonable in light of factors listed in § 3553(a), and declaring that it would not depart from the Guidelines. *See Rita v. United States*, 551 U.S. 338, 358 (2007) (holding that the sentencing court's rejection of a downward variance was legally sufficient based on similar facts). Therefore, the district court did not plainly err in sentencing Sutton.

Accordingly, we REVERSE the district court's application of the two-level dangerous weapons enhancement and REMAND for resentencing. We AFFIRM the district court's judgment in all other respects.